J-A08035-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTOPHER ALLEN TEVIS | |
| Appellant | No. 403 WDA 2013 |

Appeal from the Judgment of Sentence of November 1, 2012
In the Court of Common Pleas of Blair County
Criminal Division at Nos.: CP-07-CR-0000703-2012
CP-07-CR-0001874-2011

BEFORE:  SHOGAN, J., OLSON, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                **FILED OCTOBER 03, 2014**

Christopher Tevis appeals his November 1, 2012 judgment of sentence. We vacate Tevis' judgment of sentence and remand for additional proceedings consistent with this memorandum.

On August 23, 2011, D.S. and Tevis, her boyfriend at the time, argued about their relationship throughout the day. When D.S. attempted to leave Tevis' apartment, Tevis stood in front of the doorway, blocking her from exiting. Around midnight, Tevis demanded to have sexual intercourse with D.S., a request that she refused. According to D.S., Tevis then grabbed her by the arms, punched her in the head, used a utility knife to cut her shirt below her breast, and held a large kitchen knife to her throat. Eventually D.S. was able to escape Tevis' residence. D.S. later called the police and was taken to the Altoona Hospital by an ambulance. At the hospital, D.S.

accused Tevis of raping and assaulting her. On August 29, 2011, the Altoona Police arrested Tevis and charged him with aggravated assault, simple assault, rape—forcible compulsion, and unlawful restraint.[1] At the time of his arrest, Tevis made several unsolicited statements to the police. Specifically, Tevis stated that D.S. had physically attacked him without provocation by punching him in the face multiple times. Tevis further alleged that any injuries that D.S. suffered were the result of Tevis defending himself against D.S.

Tevis was unable to post bail and remained lodged in the Blair County Prison. While incarcerated, Tevis mailed a series of letters to D.S. In Tevis' first letter, dated August 30, 2011, Tevis asked D.S. to testify that her initial report to the police was "exaggerated and inaccurate." Notes of Testimony ("N.T."), 7/30/2012, at 61. Tevis also instructed D.S. to state that she was under the influence of drugs and alcohol when she reported the incident to police, and that she was "under duress." *Id.*

On September 3, 2011, Tevis sent a second letter to D.S., which stated, in relevant part, as follows:

> I'm being charged with rape and assault and like ten other things. You need to write a very serious letter to [Magisterial District Judge] Todd Kelly explaining you were drunk and the only true part about the report was me holding you down. . . . My hearing is September 7. Write a letter to the judge, Todd

---

[1]    18 Pa.C.S. §§ 2702(a)(4), 2701(a)(1), 3121(a)(2), and 2902(a)(1), respectively.

Kelly, and be at 615 Fourth Street Altoona, at 2 p.m. on the 7th so I can see you.

*Id.* at 64.

Before his September 7, 2011 preliminary hearing, Tevis made several telephone calls to D.S. from the Blair County Prison. During those calls, Tevis told D.S. to recant her prior statements to police, to refuse to testify against him, and to request that the Commonwealth dismiss the charges against Tevis. Despite D.S.'s repeated refusals to comply, Tevis continued to insist. *Id.* at 83, 108, 111, 120, 122.

Tevis also circulated multiple notes to inmates in the Blair County Prison. In one such letter, Tevis wrote:

[D.S.], Hollidaysburg, Altoona. . . . Don't add me as a friend on FaceBook. Add her. Worry about me later. You got phone number [*sic*]. A good looking tall, dark, handsome musician could easily get close to her at bars like A.J.'s and Terry's Place. You can see what she looks like on FaceBook. Get someone to land her ass in jail before Christmas but after I am sentenced. Drugs would be the easy way. I swear on my life [] I will take care of you. Destroy this.

*Id.* at 190-91. One inmate, Dennis Johnson, discovered this note and gave it to a Corrections Officer.

Tevis wrote a similar letter to Damien Hild, an inmate in Tevis' cellblock. In that letter, Tevis asked Hild to shoot blue and purple paintballs at D.S.'s residence after Hild's release from prison. Tevis further instructed Hild to:

[g]et a sharpie and write [D.S.] is a lying, cheating, bipolar dope whore everywhere you go—bathrooms, walls, post on FaceBook,

> YouTube until you Google her name and it shows up. . . . Get a
> bag of drugs. Find someone to get [D.S.] fucked up and . . .
> [t]ake hundreds of photos of her being a dope whore and post
> them all over the Net with her full name and list Altoona,
> Hollidaysburg, Duncansville as her locations.

*Id.* at 201. Following his release from prison, Hild turned Tevis' letter over to the Hollidaysburg Borough Police. As a result of Tevis' letters and phone calls to D.S., as well as the letters that the police obtained from Hild and Johnson, Tevis was charged with intimidation of witnesses or victims and harassment[2] on February 27, 2012. Those charges were filed and docketed at CP-07-CR-0000703-2012.

The trial court consolidated Tevis' two cases for a jury trial, which commenced on July 30, 2012, and ended on August 1, 2012. At trial, D.S. essentially repeated the allegations that she made to police on August 24, 2011. Specifically, D.S. testified that Tevis choked her, held a large kitchen knife to her throat, pinned her to the ground, and forcibly raped her. Tevis' testimony at trial was at odds with D.S.'s version of the events. Tevis testified that the August 23-24, 2011 incident began when D.S., who had been drinking heavily, struck him in the face three times without provocation. According to Tevis, he grabbed D.S. and held her arms at her side to prevent her from attacking him further. Tevis additionally testified that he had never strangled, raped, or attacked D.S. with a knife.

_____

[2] 18 Pa.C.S. §§ 4952(a)(2) and 2709(a)(7), respectively.

On August 1, 2012, the jury acquitted Tevis of rape—forcible compulsion, aggravated assault, and unlawful restraint. The jury found Tevis guilty of simple assault and intimidation of witnesses or victims. On November 1, 2012, Tevis was sentenced at both docket numbers. The trial court sentenced Tevis to six to twelve months' imprisonment for simple assault, and sixty to one hundred twenty months' imprisonment for intimidation of a witness. Imposed consecutively, Tevis' sentences resulted in an aggregate term of five and one half to eleven years' incarceration.

On November 1, 2012, Tevis timely filed a post-sentence motion seeking a new trial in both cases. On November 13, 2012, Tevis filed a supplemental post-sentence motion. Therein, Tevis argued, *inter alia*, that the sentence imposed for intimidation of a witness was "too harsh under the circumstances," given that the jury acquitted Tevis of rape. Supplemental Post-Trial Motions, 11/13/2012, at 1 (unnumbered). On February 15, 2013, the trial court denied Tevis' post-sentence motions without a hearing. On that same day, Tevis timely filed a notice of appeal. The trial court did not order Tevis to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), nor did the trial court file an opinion pursuant to Pa.R.A.P. 1925(a).

Tevis presents the following issues for our review:

1. Whether the trial court committed error when it sentenced Tevis for intimidation of a witness as a felony of the first degree when the underlying charges of rape and aggravated assault resulted in an acquittal.

      a. Whether the trial court's excessive and impermissive [*sic*] sentencing of Tevis consecutively to six to twelve months and sixty to one hundred and twenty months raises a substantial question as to the reasonableness of the sentence.

      b. Whether the default grading of the intimidation of witnesses or victims charge should be a misdemeanor of the second degree based on the acquittal of the underlying charges.

      c. Whether the enhancement of the intimidation of witnesses or victims charge based on the sole act of charging when the facts that aggravated the grading were never submitted to the jury for determination is a violation of the Sixth Amendment.

2. Whether the trial court gave a faulty justification instruction to the jury on the simple assault charge, effectively raising the threshold from bodily injury to serious bodily injury.

3. Whether there was insufficient evidence to convict on the intimidation of a witness charge where Tevis made no express request for the alleged victim to change her testimony or threatened the alleged victim.

Brief for Tevis at 10-11 (minor modifications for clarity).

In his first claim, Tevis' challenges the discretionary aspects of his sentences for simple assault and intimidation of witnesses or victims. However, because we vacate Tevis' judgment of sentence for simple assault on other grounds, we need not consider the reasonableness of that portion of his sentence.

Challenges to the discretionary aspects of sentencing are not reviewable as of right. ***Commonwealth v. Sierra***, 752 A.2d 910, 912 (Pa. Super. 2000). Rather, an appellant challenging the discretionary aspects of his or her sentence must satisfy the following four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006) (some citations omitted).

To obtain review of the merits of a challenge to the discretionary aspects of his sentence, Tevis must include a Pa.R.A.P. 2119(f)[3] statement in his brief demonstrating that he has raised a substantial question that the sentence imposed is not appropriate under the Sentencing Code. 42 Pa.C.S. § 9781(b). A substantial question requires a showing that "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Commonwealth v. Tirado*, 870 A.2d 362, 365 (Pa. Super. 2005). Our inquiry "must focus on the reasons for which the appeal is

_____

[3]     In pertinent part, Rule 2119 provides:

An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

Pa.R.A.P. 2119(f).

sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." *Id.*

Tevis has preserved this issue for our review by raising it in his November 13, 2012 post-sentence motion. Moreover, Tevis' brief contains the necessary Rule 2119(f) statement. Accordingly, Tevis has complied with the technical requirements necessary to present a challenge to the discretionary aspects of his sentence. In his Rule 2119(f) statement, Tevis claims that the trial court failed to consider his background, low prior record score, and other mitigating factors before imposing the five to ten-year sentence for intimidation of witnesses or victims. Brief for Tevis at 14. Tevis also alleges that the trial court was motivated by its own displeasure with the sentencing guidelines, and, as a result, issued a sentence that was inconsistent with the sentencing code. *Id.*

A claim that the sentencing court failed to consider certain mitigating factors generally does not present a substantial question. *Commonwealth v. Corley*, 31 A.3d 293, 297 (Pa. Super. 2011). However, an allegation of bias in sentencing implicates the fundamental norms underlying sentencing, which presents a substantial question. *Id.* Accordingly, we grant Tevis' petition for allowance of appeal and consider the merits of his challenge to the discretionary aspects of his sentence.

Our standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse

of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Shugars***, 895 A.2d 1270, 1275 (Pa. Super. 2006).

Additionally, our review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. §§ 9781(c) and (d). Subsection 9781(c) provides:

The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1)    the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2)    the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3)    the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S. § 9781(c).

In reviewing the record, we consider the following factors:

(1)    The nature and circumstances of the offense and the history and characteristics of the defendant.

(2)    The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3)    The findings upon which the sentence was based.

(4)    The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

Instantly, Tevis' sentence for intimidation of witnesses or victims falls within the standard range of our sentencing guidelines. Tevis, therefore, must demonstrate that the application of those guidelines nonetheless clearly was unreasonable. 42 Pa. C.S. § 9781(c)(2). To this end, Tevis argues that the trial court failed to consider his low prior record score, background, and the fact that the jury acquitted Tevis of the predicate grading offense. Brief for Tevis at 20. We disagree.

Despite Tevis' assertions to the contrary, the sentencing court unquestionably was aware of Tevis' background. Notes of Testimony–Sentencing ("N.T.S."), 11/1/2012, at 7-8. The court had the benefit of a pre-sentence investigation report, and we presume that it considered all of the mitigating information contained therein. *See Commonwealth v. Devers*, 546 A.2d 12 (Pa. 1988) (holding that when a sentencing court has the benefit of a pre-sentence report, we presume that the court duly considered any mitigating information contained therein). The court also heard testimony from Tevis' mother and from Tevis himself. N.T.S. at 9-15.

In its sentencing order, the court observed that the offense of intimidation of witnesses or victims "goes directly to the heart of the integrity of the justice system." Order of Sentence, 11/13/2012, at 5. The sentencing transcript also belies Tevis' allegation that the court failed to consider the fact that the jury had acquitted Tevis of the predicate grading

- 10 -

offense of rape. N.T.S. at 15 (stating that the court was "very much aware" that the jury had acquitted Tevis of rape and aggravated assault).

The gist of Tevis' argument is not that the court failed to consider the pertinent sentencing factors, but rather that the court weighed those factors in a manner inconsistent with Tevis' desires. This is not a basis upon which we may grant relief. Accordingly, the record supports the sentencing court's reasoning and its decision conforms to the applicable law. The sentence imposed for Tevis' conviction of intimidation of witnesses or victims was within the standard range of the sentencing guidelines, and the record reflects that the court considered all of the evidence presented at the sentencing hearing. Therefore, the sentencing court did not impose a manifestly unreasonable decision, and we discern no abuse of the court's discretion. *See Shugars*, 895 A.2d at 1275.

Nor can we conclude that Tevis' standard range sentence was the result of the trial court's bias. Notwithstanding the trial court's noted disapproval of the sentencing guidelines, the court sentenced Tevis within the standard range of those guidelines. *See* N.T.S. at 7 ("I'm appalled by the poor judgment of the Sentencing Commission and the legislature of this Commonwealth . . . particularly with regard to the offense of [a]ssault."). Under these circumstances, we are wholly unpersuaded that the trial court "clearly wanted to excoriate Tevis." Brief for Tevis at 21. Accordingly, Tevis' bias argument, too, is meritless.

Tevis next challenges the trial court's grading of his conviction for intimidation of witnesses or victims as a first-degree felony. The proper grading of a criminal offense is an issue of statutory interpretation and, therefore, constitutes a non-waivable challenge to the legality of a defendant's sentence. *Commonwealth v. Rossetti*, 863 A.2d 1185, 1193 (Pa. Super. 2004). The interpretation of a statute presents a pure question of law, for which our standard of review is *de novo* and the scope of our review is plenary. *Commonwealth v. Davidson*, 938 A.2d 198, 203 (Pa. 2007).

Subsection 4952(b), relating to the grading of intimidation of witnesses or victims, provides as follows:

(1) The offense is a felony of the degree indicated in paragraphs (2) through (4) if:

   (i) The actor employs force, violence or deception, or threatens to employ force or violence, upon the witness or victim or, with the requisite intent or knowledge upon any other person.

   (ii) The actor offers any pecuniary or other benefit to the witness or victim or, with the requisite intent or knowledge, to any other person.

   (iii) The actor's conduct is in furtherance of a conspiracy to intimidate a witness or victim.

   (iv) The actor accepts, agrees or solicits another to accept any pecuniary or other benefit to intimidate a witness or victim.

   (v) The actor has suffered any prior conviction for any violation of this section or any predecessor law hereto, or has been convicted, under any Federal statute or statute of any other state, of an act which would be a violation of this section if committed in this State.

> (2) The offense is a felony of the first degree if a felony of the first degree or murder in the first or second degree was charged in the case in which the actor sought to influence or intimidate a witness or victim as specified in this subsection.
>
> (3) The offense is a felony of the second degree if a felony of the second degree is the most serious offense charged in the case in which the actor sought to influence or intimidate a witness or victim as specified in this subsection.
>
> (4) The offense is a felony of the third degree in any other case in which the actor sought to influence or intimidate a witness or victim as specified in this subsection.
>
> (5) Otherwise the offense is a misdemeanor of the second degree.

18 Pa.C.S. § 4952(b).

Applying section 4952 to the case *sub judice*, the Commonwealth charged Tevis with intimidation of witnesses or victims, graded as a first-degree felony. Because Tevis initially was charged with rape, a first-degree felony, the Commonwealth charged the intimidation of witnesses or victims count as a first-degree felony pursuant to subsection 4952(b)(2). Tevis argues that, because the jury ultimately acquitted him of rape, the trial court should have treated the offense as a second-degree misdemeanor at sentencing. We disagree.

In **Commonwealth v. Felder**, 75 A.3d 513 (Pa. Super. 2013), Felder initially was charged with simple assault, conspiracy to commit simple assault, and aggravated assault. Felder also was charged with intimidation of witnesses or victims, which the Commonwealth graded as a first-degree felony based upon Felder's underlying felony charge of aggravated assault.

- 13 -

A jury convicted Felder of simple assault and intimidation of witnesses or victims, but deadlocked on the aggravated assault charge. The Commonwealth subsequently *nolle prossed* the aggravated assault.

On appeal, Felder contended that the trial court erred in grading her intimidation of witnesses or victims conviction as a first-degree felony, because the jury had had not convicted her of aggravated assault. In rejecting that argument, we stated as follows:

> A first-degree felony was *charged in this case*, and thus the trial court properly graded Felder's conviction for witness/victim intimidation as a first-degree felony pursuant to subsection 4952(b)(2). Felder's alternative interpretation of this subsection would require us to insert additional language into the statute, namely that the first-degree felony charge "continued to exist in the case at the time of sentencing." Nothing in [sub] section 4952(b)(2) suggests that the legislature intended such a result. To the contrary, the statute's focus on the most serious crime charged makes eminent sense, since the relevant charge is the most serious one a criminal defendant attempted to escape by use of intimidation.

*Felder*, 75 A.3d at 517 (italics in original).

Tevis argues that the instant matter is distinguishable from *Felder*, because Tevis was acquitted of the rape charge, whereas the jury deadlocked with respect to Felder's underlying felony charge. We discern no basis to conclude that the jury's disposition in this case should preclude or alter our determination that *Felder* controls this case. The plain language of section 4952 clearly states that the offense is a first-degree felony when "a felony of the first degree . . . **was charged** in the case." 18 Pa.C.S. § 4952(b)(2) (emphasis added). As in *Felder*, we decline to insert

additional language into the statute. Accordingly, Tevis' claim that the trial court incorrectly graded his conviction for intimidation of witnesses or victims fails.[4]

Tevis next argues that his sentence for intimidation of witnesses or victims violates the Sixth Amendment, pursuant to the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, __ U.S. __, 133 S.Ct. 2151 (2013). Specifically, Tevis contends that subsection 4952(b)(2), which states that the offense is a first-degree felony when a first-degree felony has been charged in the underlying case, constitutes an element of the offense of intimidation of witnesses or victims. *See* 18 Pa.C.S. § 4952(b)(2) ("The offense is a felony of the first degree if a felony of the first degree . . . was charged in the case in which the actor sought to influence or intimidate a witness."). Therefore, under *Apprendi*, the jury was required to find

_____

[4] Tevis also argues that the General Assembly could not have intended to grant prosecutors the broad authority to dictate a defendant's sentence "merely by putting ink to paper." Brief for Tevis at 22. Doubtless, the mere charging of a first-degree felony could potentially increase a defendant's maximum allowable sentence pursuant to section 4952. However, we may not rewrite a statute under the pretext of interpreting it. *See* 1 Pa.C.S. § 1921 ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Moreover, in Tevis' case (and indeed, in the usual course of events) the underlying felony was charged long before police charged Tevis with intimidation of witnesses or victims. Thus, Tevis' fear that the statute may empower prosecutors to dictate a defendant's sentence is overstated, at least under the circumstances of this case.

beyond a reasonable doubt that the case in which Tevis sought to influence D.S. involved a first-degree felony.

In ***Apprendi***, the United States Supreme Court held that a defendant's Fourteenth Amendment right to due process and Sixth Amendment right to a trial by jury require that any fact, other than a prior conviction, which increases the penalty for a crime beyond the prescribed statutory maximum, must be submitted to a jury and proven beyond a reasonable doubt. ***Apprendi***, 530 U.S. at 490. In ***Cunningham v. California***, 549 U.S. 270 (2007), the Supreme Court clarified the principles of ***Apprendi*** as follows:

> Our precedents make clear that the statutory maximum for ***Apprendi*** purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict **or admitted by the defendant**. In other words, the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority.

***Cunningham***, 549 U.S. at 283 (internal citation and quotation marks omitted, emphasis added).

Turning to the case *sub judice*, the grading of the offense of intimidation of witnesses or victims is controlled by 18 Pa.C.S. § 4952(b), which provides in relevant part:

> (2) The offense is a felony of the first degree if a felony of the first degree or murder in the first or second degree was charged in the case in which the actor sought to influence

- 16 -

> or intimidate a witness or victim as specified in this subsection.
>
> * * *
>
> (3) Otherwise the offense is a misdemeanor of the second degree.

18 Pa.C.S. § 4952(b).

Pursuant to subsection 4952(b)(5), the default grading of the offense of intimidation of witnesses or victims is as a second-degree misdemeanor. 18 Pa.C.S. § 4952(b)(5). However, because the case in which Tevis sought to intimidate D.S. involved a charge of rape, the offense was elevated to a first-degree felony pursuant to subsection 4952(b)(2). We note that the prescribed maximum sentence for a second-degree misdemeanor is two years, whereas the prescribed maximum sentence for a first-degree felony is twenty years. **See** 18 Pa.C.S. §§ 1103–04. Therefore, Tevis' five to ten year sentence for intimidation of witnesses or victims would have exceeded the statutory maximum sentence had the crime been graded as a second-degree misdemeanor. **See Cunningham**, *supra*.

With regard to the elements of the offense of intimidation of witnesses or victims, the trial court instructed the jury as follows:

> The third element involved here I'm going to bring to resolution now. The third element is that the case in which [Tevis] is alleged to have tried to influence or intimidate [D.S.] was first or second — was a felony of the first degree. I'm instructing you as a matter of law that as the case has been presented by the Commonwealth it is alleged that the intimidation took place with regard to a felony of the first degree. Now you don't have to concern yourselves with whether or not that element has been

- 17 -

> fulfilled here and met. It has. Your concern has to be for the other aspects of this charge of intimidation.

N.T., 8/1/2012, at 45.

According to Tevis, **Apprendi** requires the jury—as opposed to the trial judge—to find that Tevis sought to influence or intimidate D.S. with regard to a case involving a first-degree felony. Heretofore, no Pennsylvania case has addressed whether subsection 4952(b)(2) constitutes an element of the offense of intimidation of witnesses of victims under **Apprendi**. Nonetheless, even assuming, *arguendo*, that subsection 4952(b)(2) represents an element of the crime that the jury must find beyond a reasonable doubt, Tevis' claim still fails.

Tevis has not disputed that he was charged with rape, at trial, during his sentencing, or before this court. Nor did Tevis object when the trial court instructed the jury that subsection 4952(b)(2) had been met as a matter of law. Moreover, Tevis' attorney admitted at sentencing that Tevis was charged with rape. N.T.S. at 15 ("I don't need to remind the [c]ourt that my client was acquitted of the [r]ape and [a]ggravated [a]ssault charges."). It is well-settled that admissions by defense attorneys constitute admissions by his or her client. **Commonwealth v. Johnson**, 961 A.2d 877, 882 (Pa. Super. 2008). Because the dictates of **Apprendi** apply only to facts not admitted by the defendant, Tevis' failure to challenge the fact of his underlying rape charge, along with his counsel's admission to the fact of the charge, precludes relief. **Cunningham**, 549 U.S. at 283 ("[T]he statutory

maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or **admitted by the defendant.**") (emphasis added); ***Commonwealth v. Belak***, 825 A.2d 1252, 1256 (Pa. 2003) (finding no *Apprendi* violation where the defendant did not contest the facts underlying his burglary convictions at trial or at sentencing).

In his next issue, Tevis alleges that the trial court's justification jury instruction incorrectly defined the Commonwealth's burden to disprove self-defense. Based upon our review of the record, we agree that the trial court's instruction misstated the law. Accordingly, we vacate Tevis' conviction for simple assault.

Our standard of review is well-defined:

[W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that[] it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and **accurately** presented to the jury for its consideration. Only where there is an abuse of discretion or an **inaccurate statement of the law** is there reversible error.

***Commonwealth v. Kerrigan***, 920 A.2d 190, 198 (Pa. Super. 2007) (citations, internal quotation marks, and brackets omitted; emphasis added).

Following closing arguments, Tevis' requested that the trial court instruct the jury on self-defense.

**The Court**: Where do you think it fits, the justification?

**Defense Counsel**: If they believe [Tevis'] testimony that [D.S.] struck him and was attacking him and then he held her down to prevent that from happening, I think that's justification. It's self-defense basically.

**The Court**: That's what I was going to say, what you're talking about is self-defense.

**Defense Counsel**: Yeah, I think that's — I thought it was the same thing.

N.T., 8/1/2012, at 25.

After a brief recess, Tevis' counsel provided the court with a copy of the standard criminal jury instruction on the use of less than deadly force to prevent suicide or the commission of crime. Pa. SSJI (Crim) § 9.508D (2005). Tevis requested that the court charge the jury consistently with paragraph two of that instruction, which provides as follows:

The Commonwealth has the burden of disproving the defense of justification. That means you cannot find the defendant guilty unless the evidence convinces you beyond a reasonable doubt that the defendant did not reasonably believe that the force [he] [she] used was immediately necessary to prevent [name of person attempting suicide or crime] from:

- committing suicide

- inflicting serious bodily injury upon [himself] [herself]

- committing a crime involving or threatening bodily injury

- committing a crime involving or threatening damage to or loss of property

- committing a crime involving or threatening a breach of the peace

*Id.* (formatting modified for clarity). Tevis initially asked the trial court to instruct the jury both as to D.S. inflicting serious bodily injury upon herself

and D.S. committing a crime involving or threatening bodily injury. Thereafter, the following exchange took place:

> **Defense Counsel**: I think the Commonwealth has a problem with the first one, the inflict serious bodily injury on herself[,] but I'm fine with the second one.
>
> **District Attorney**: I'll leave it to your discretion on the second one, Your Honor. The first one I do have a problem with.
>
> **Defense Counsel**: I mean I think there was testimony that [Tevis] tried to prevent [D.S.] from cutting herself[,] but I think the main gist is that she was hitting him.
>
> **The Court**: Well I've been doing my own research while we took a break. I'm satisfied the second paragraph here certainly is more fitting than the first. The one thing I'm wondering about is I'm not sure — well okay.
>
> **Defense Counsel**: I think there actually —
>
> **The Court**: The unlawful restraint there's a reference to serious [bodily injury] because in the other charges it's bodily injury not serious bodily injury, but it is referenced in the unlawful restraint charge.
>
> **Defense Counsel**: I think really it only applies to the simple assault and the unlawful restraint. I don't think it applies to the aggravated assault.
>
> **District Attorney**: It would not apply to that charge.
>
> **The Court**: No.
>
> **Defense Counsel**: It's basically just that they believe [Tevis'] version of the events which would just be the bodily injury.
>
> **The Court**: The last part of this, the committing the crime involving or threatening bodily injury, that would apply to the contention that [Tevis] was defending himself against [D.S.]
>
> **Defense Counsel**: Yeah.

N.T., 8/1/2012, at 25.

- 21 -

The trial court subsequently agreed to give the charge insofar as it related to D.S. threatening Tevis with bodily injury, but refused to give the portion of the charge relating to D.S.'s attempt to inflict serious bodily injury upon herself. The court then instructed the jury as follows:

> Now while we're on the subject of these charges, I want to bring to your attention that it is the law of this Commonwealth that the Commonwealth has the burden of disproving the defense of justification. Thus, you cannot find [Tevis] guilty in these various charges unless the evidence convinces you beyond a reasonable doubt that [Tevis] did not reasonably believe that the force he used was immediately necessary to prevent [D.S.] from inflicting **serious bodily injury** on him. Now this is pertinent. Well let me finish this reading first. Well that takes me to the end of it. Now this particular aspect of the law pertains to the charges of bodily injury and the charge of simple assault and in the — would it be the charge of aggravated assault?

*Id.* at 41 (emphasis added). The following sidebar discussion then occurred:

> **Defense Counsel**: It doesn't have to be serious bodily injury.
>
> **The Court**: So this is only as to the charge of simple assault?
>
> **District Attorney**: Simple assault and unlawful restraint.
>
> **Defense Counsel**: And then it only requires [] bodily injury or a crime involving bodily injury.
>
> * * *
>
> **The Court**: I think I said bodily injury but what I'm talking about is it pertains to the two charges of simple assault . . . and unlawful restraint.

*Id.* at 42. The court then continued to instruct the jury as follows:

> They have confirmed that my belief here is that what I just told you about the burden on the Commonwealth to disprove the defense of justification applies with regard, to the crimes of

- 22 -

simple assault and intimidation of witnesses. Just those two charges of where this applies.

*Id.* at 43. Another sidebar discussion followed wherein the Commonwealth pointed out that the court had incorrectly stated that the justification defense applies to the charge of intimidation of witnesses or victims. The court then corrected its prior statement:

> Now these — this particular comment that I offered to you about the burden of the Commonwealth applies in just two cases, just two charges. The one is unlawful restraint and the other is simple assault. Got it. Hopefully I do too, okay.

*Id.* at 44. Thereafter, Tevis asked the trial court to note his objection to the use of the term "serious bodily injury" rather than "bodily injury." *Id.* at 57.

Tevis argues that the court's instruction permitted the jury to reject his justification defense merely by finding that Tevis did not reasonably believe that force was necessary to prevent serious bodily injury to himself. Brief for Tevis at 25. Stated differently, Tevis argues that the trial court erroneously increased the level of injury required to demonstrate self-defense from "bodily injury" to "serious bodily injury." We agree.

As a preliminary matter, we note that Pa. SSJI (Crim) § 9.508D relates to cases where a defendant uses force to prevent suicide or the commission of certain classes of crimes. It is not, as both Tevis and the trial court appear to have believed, a general self-defense instruction. *Compare* Pa. SSJI (Crim) §9.501 (2005) (stating that a defendant is justified in using non-deadly force "when the actor believes that such force is immediately

necessary for the purpose of protecting himself against the use of **unlawful force**" (emphasis added)). Nevertheless, the record demonstrates that Tevis asked the trial court to instruct the jury that the burden is on the Commonwealth of disprove beyond a reasonable doubt that Tevis reasonably believed that force was immediately necessary to prevent D.S. from "committing a crime involving or threatening bodily injury." N.T., 8/1/2012, at 25. The trial court agreed that the evidence—specifically, Tevis' testimony that he used force to defend himself against D.S.—supported the instruction.

The trial court's instruction permitted the jury to find Tevis guilty of simple assault if they found that Tevis did not reasonably believe the use of force was immediately necessary to prevent D.S. from inflicting **serious bodily injury**[5] upon him. *Id.* at 41. However, the Commonwealth had the burden of demonstrating beyond a reasonable doubt that Tevis did not reasonably believe that force was necessary to prevent D.S. from committing a crime "involving or threatening **bodily injury**." 18 Pa.C.S. § 508 (emphasis added). Accordingly, the trial court's instruction incorrectly defined the Commonwealth's burden.

_____

[5] The trial court instructed the jury that "[s]erious bodily injury means any physical injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." N.T., 8/1/2012, at 37.

This does not end our inquiry, because, before relief may be granted, we must find that the error was not harmless. It is well-settled that the Commonwealth bears the burden of establishing that the error was harmless beyond a reasonable doubt. **Commonwealth v. Story**, 383 A.2d 155, 162 n.11 (Pa. 1978). With respect to harmless error, we note that:

> The harmless error doctrine reflects a fundamental principle which we think is particularly apt here, *i.e.*, "that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the fundamental fairness of the trial rather than on the virtually inevitable presence of immaterial error." **Delaware v. Van Arsdall**, 475 U.S. 673, 681 (1986). If this court can conclude beyond a reasonable doubt that the error complained of did not contribute to the verdict, no new trial is required.

**Commonwealth v. Weisman**, 584 A.2d 980, 985 (Pa. Super. 1990).

> Harmless error exists where (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Commonwealth v. Hutchinson**, 811 A.2d 556, 561 (Pa. 2002) (quoting **Commonwealth v. Robinson**, 721 A.2d 344, 350 (Pa. 1999)).

At trial, D.S. testified that the altercation began when Tevis grabbed her by her arms to prevent her from leaving Tevis' apartment. *Id.* at 41. According to D.S., Tevis then choked her and punched her. *Id.* at 42-43, 46. In contrast, Tevis testified that the incident began when D.S. punched

- 25 -

him in the face multiple times without provocation. N.T., 7/30/2012, at 41-43, 46, 65. Tevis further argued that D.S.'s injuries—specifically the bruises on her arms—were caused by Tevis' attempts to restrain her after she struck him. *Id.* at 10, 12. Finally, Tevis encouraged the jury to reject D.S.'s testimony, which Tevis contended was implausible and inconsistent. *Id.* at 12.

The jury, in finding Tevis not guilty of rape, unlawful restraint, and aggravated assault, clearly accepted, at least in part, Tevis' version of the events, and rejected a large portion of D.S.'s testimony. Moreover, based upon the evidence presented at trial, the jury undeniably could have found that D.S. threatened Tevis with bodily injury, and that Tevis reasonably believed that force was necessary to protect himself. The trial court's instruction, however, permitted the jury to convict Tevis for simple assault by finding that D.S. did not threaten Tevis with physical injury that posed a substantial risk of death or permanent disfigurement. *See* N.T., 8/1/2012, at 37. Indeed, Tevis' entire defense was that the incident began when D.S. physically attacked him. *Id.* at 10, 12. In short, it is possible that the jury wholly accepted Tevis' account of the events, but still convicted Tevis of simple assault because the jury determined that D.S. did not threaten Tevis with **serious** bodily injury. For us to extrapolate further from the jury's verdict would be nothing more than pure conjecture.

Furthermore, the Commonwealth has offered no argument that would lead us to conclude that the trial court's erroneous self-defense instruction

was harmless. ***See Story***, 383 A.2d at 162, n.11 (stating that the Commonwealth bears the burden of establishing harmless error). Because we cannot conclude beyond a reasonable doubt that the self-defense instruction did not contribute to the guilty verdict, as to simple assault, we must vacate Tevis' conviction for that offense.

In his final issue, Tevis argues that the evidence was insufficient to support his conviction for intimidation of witnesses or victims.

> [O]ur applicable standard of review is whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the factfinder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. Additionally, when examining sufficiency issues, we bear in mind that: the Commonwealth's burden may be sustained by means of wholly circumstantial evidence; the entire trial record is evaluated and all evidence received against the defendant considered; and the trier of fact is free to believe all, part, or none of the evidence when evaluating witness credibility.

***Commonwealth v. Crabill***, 926 A.2d 488, 490-91 (Pa. Super. 2007) (internal citations omitted).

The offense of intimidation of witnesses or victims is defined, in pertinent part, as follows:

> (a) A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:

> * * *

- 27 -

> (2) Give any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.

18 Pa.C.S. § 4952.  Actual intimidation is not required for a conviction; an attempt with the appropriate *mens rea* is sufficient.  **Commonwealth v. Collington**, 615 A.2d 769, 770 (Pa. Super. 1992).

Here, Tevis contends that the evidence is insufficient to support his conviction because the Commonwealth failed to demonstrate that Tevis expressly threatened D.S.  Brief for Tevis at 26.  However, the evidence presented at trial revealed that Tevis mailed three letters to D.S. while he was incarcerated.  In those letters, Tevis instructed D.S. to write letters to a Magisterial District Judge and an assistant district attorney disavowing her earlier statements to the police.  N.T., 7/30/2012, at 64.  D.S. also testified that Tevis' letters made her fearful for her safety and the safety of her son. *Id.* at 165.

It is evident from the verdict that the jury found D.S.'s testimony credible and chose not to believe Tevis' testimony that he did not intend to intimidate D.S.  The jury, as the trier of fact, was free to believe all, part, or none of the testimony presented by the witnesses. **Commonwealth v. Gooding**, 818 A.2d 546 (Pa. Super. 2003).  Moreover, at trial the Commonwealth entered Tevis' letters into evidence, and played recordings of the telephone conversations between Tevis and D.S.  The contents and timing of Tevis' letters and calls, together with the circumstances surrounding them, were sufficient for the jury to infer that Tevis intended to

intimidate D.S. to prevent her from testifying at trial. Therefore, Tevis' final issue does not merit relief.

For the foregoing reasons, we vacate Tevis' judgment of sentence and remand for retrial on the charge of simple assault. Because the trial court imposed Tevis' sentences for simple assault and intimidation of witnesses or victims consecutively, our disposition has disturbed the court's overall sentencing scheme. Accordingly, we vacate Tevis' judgment of sentence in its entirety and remand for resentencing on the intimidation of witnesses or victims count, either after retrial on the simple assault count, or in a timely fashion if the Commonwealth elects not to retry Tevis for simple assault. *See Commonwealth v. Williams*, 997 A.2d 1205, 1210–11 (Pa. Super. 2010) ("if a correction by this Court may upset the sentencing scheme envisioned by the trial court, the better practice is to remand [for resentencing]") (internal quotations, citations, and corrections omitted).

Judgment of sentence vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/3/2014